**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **DAMIEN PERRY,** | ) | **CASE NO. 1:17CV673** |
| | ) | |
| **Petitioner,** | ) | |
| | ) | **JUDGE JAMES G. CARR** |
| **v.** | ) | |
| | ) | **MAGISTRATE JUDGE** |
| **LYNEAL WAINWRIGHT,** | ) | **JONATHAN D. GREENBERG** |
| **Warden** | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| **Respondent.** | | |

This matter is before the undersigned pursuant to Local Rule 72.2.  Before the Court is

the Petition of Damien Perry ("Perry" or "Petitioner"), for a Writ of Habeas Corpus filed

pursuant to 28 U.S.C. § 2254.  Perry is in the custody of the Ohio Department of Rehabilitation

and Correction pursuant to journal entry of sentence in the case of *State v. Perry*, Cuyahoga

County Court of Common Pleas Case No. CR-01-400753-B.

For the following reasons, the undersigned recommends the Petition be DISMISSED.

## I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment

of a state court, factual determinations made by state courts are presumed correct unless rebutted

by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695

F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The

state appellate court summarized the facts underlying Perry's conviction as follows:

> {¶ 3} The facts of this case were previously set forth by this court in Ali's appeal, *State v. Ali*, 8th Dist. No. 82076, 2004–Ohio–1782 (a direct appeal by Ali), *rev'd on other grounds, In re Ohio Criminal Sentencing Statutes Cases*, 109 Ohio St.3d 313, 2006–Ohio–2109, 847 N.E.2d 1174. On January 16, 2001, Perry enlisted Ali's assistance with his plan to rob a grocery store owned by Lababidi. The aggravated murder and aggravated robbery were recorded on the store's videotape surveillance camera. The videotape captures the entire incident. It clearly depicts Perry standing behind the counter, pointing a gun to Lababidi's head. Perry ordered Lababidi to open the cash register drawer. Ali stood on the other side of the counter and had his gun pointed at Lababidi. When Lababidi opened the cash register, Ali reached over the counter and grabbed money from the drawer. Perry then noticed that Lababidi had a gun. Perry began to struggle with Lababidi. Lababidi then shot his gun several times, shooting Perry in the stomach and Ali in the shoulder and the groin. Ali came around behind the counter and shot and killed Lababidi. Perry and Ali then fled the scene. *Id*. at ¶ 7, 10–11.

> {¶ 4} The evidence at Ali's trial established that Perry was the mastermind behind the robbery. Perry testified that he planned the robbery of the store with Carmelita Seay ("Seay"), a friend of his who lived across the street from Lababidi's store. He and Ali were at her apartment, smoking marijuana cigarettes laced with PCP. Perry came up with the idea to rob a store and Seay suggested that Lababidi's store would be easy to rob. At that time, Perry enlisted Ali's assistance to rob the store. *Id*. at ¶ 9.

> {¶ 5} Perry then parked his car next to the store and retrieved two semiautomatic handguns from the car. He gave Ali a .25 caliber semiautomatic handgun and kept one gun for himself—a .9 millimeter semiautomatic handgun. Perry testified that Seay went into the store first to make sure no customers were present and then left. Perry and Ali then entered the store, where Perry immediately ran behind the counter to Lababidi and held a gun to his head, ordering him to open the cash register drawer. Perry further testified that Ali stood across from the counter, pointing the gun at Lababidi. When Lababidi opened the drawer, Ali grabbed the money from the drawer. Perry then noticed that Lababidi had a gun. Perry began struggling with him and Lababidi shot his gun several times. Lababidi shot Perry in the stomach and Ali in the shoulder and the groin. Ali came around behind the counter and shot Lababidi. Perry testified that Lababidi went limp and the two of them ran out of the store. *Id*. at ¶ 10.

2

*State v. Perry,* 2013 WL 1694935, at *1 (Ohio App. 8th Dist. April 18, 2013).

## II. Procedural History

### A.    Trial Court Proceedings

In January 2001, a Cuyahoga County Grand Jury charged Perry with aggravated murder and aggravated robbery, with firearm and felony murder specifications.  (Doc. No. 7-1, Exh. 1.)  Perry pled not guilty to all Counts.  (Doc. No. 7-1, Exh. 2.)

From February 7-9, 2001, Perry, through counsel, filed multiple pre-trial motions, including a Motion to Dismiss Portions of Aggravated Murder Indictment.  (Doc. No. 7-1, Exh. 3, 44.)  On November 21, 2001, Perry waived his right to a jury trial and elected to be tried by a three-judge panel.  (Doc. No. 7-1, Exh. 5.)

The case proceeded to a trial commencing January 7, 2002.  (Doc. No. 7-1, Exh. 44.)  On January 8, 2002, in the midst of trial, Perry informed the court he wished to change his plea.  (Doc. No. 7-1, Exh. 6.)  Perry entered a plea of guilty to aggravated murder with a felony murder and firearm specifications and aggravated robbery with a firearm specification.  (Doc. No. 7-1, Exh. 7.)

Following Perry's plea, the trial court proceeded immediately to sentencing.  (*Id.*)  The trial court sentenced Perry to life imprisonment with parole eligibility after 30 years plus 3 years for the aggravated murder conviction with firearm specification and five years for the aggravated robbery conviction.  (*Id.*)  The trial court ordered these sentences to be served consecutively, for an aggregate sentence of thirty-eight years to life.  (*Id.*)  The trial court, in its journal entry, specified "post release control is part of this prison sentence for the maximum period allowed for the above felony."  (*Id.*)

3

On February 25, 2002, the trial court granted Perry's Motion for An Independent

Psychological Evaluation.  (Doc. No. 7-1, Exh. 4.)

**B.      Motion to Take Judicial Notice/Resentencing**

On August 12, 2011, Perry filed a *pro se* pleading with the state trial court captioned

"Motion to Take Judicial Notice."  (Doc. No. 7-1, Exh. 8.)  This filing raised the following

claim:

> This action is proper and pursuant to a Mandate law handed down by the
> Ohio Supreme Court *in re: State v. Singleton* 124 Ohio St.3d 173 Which
> mandated this Court pursuant to Sup.R.1(b) to hold a *De novo* resentencing
> hearing for any inmate defendant whom wasn't properly given in the
> Judgment entry PRC.  Such mandate held that [If] such defendant was
> sentenced prior to July 11th 2006, then such defendant must be present at
> such hearing and if such sentence took place after this time, then the Court is
> compelled to hold a Nunc pro tunc hearing and correct the language to
> include "Mandatory PRC" and forward a filed stamp copy to the defendant
> ALL in accord with the mandate herein.

(*Id*.)

On March 22, 2012, Perry, proceeding *pro se,* filed a Motion to Withdraw Plea.  (Doc.

No. 7-1, Exh. 9.)  Within this Motion, Perry raised the following argument:

> Although, the State never Amended the Indictment to allow defendant to
> plea to the indictment without the Death Penalty specification, defendant's
> case was herd[sic] in front of a three judge panel.  This case is the result of
> the trial court's failure to comply with Crim. R. 11 in several respects.
>
> Defendant now asserts that in know[sic] way can this court determine that
> his plea was Knowingly, voluntarily, or Intelligently made in this case.
> Defendant asserts his reasons more fully in his attached memorandum.

(*Id*.)

On March 28, 2012, the state trial court appointed Perry counsel and set his case for

limited resentencing.  (Doc. No. 7-1, Exh. 10.)  On March 30, 2012, Perry, through counsel, filed

4

a "Memorandum of Law" which raised the following arguments:

1. Damien Perry seeks to withdraw his guilty plea to the Aggravated Robbery charge, in that failing to include in the Rule 11 plea colloquy any reference to postrelease control, the Court failed to comply with Crim. R. 11, and the plea must, therefore, be vacated. *See, State v. Sarkozy*, (2008), 117 Ohio St.3d 86.  In *Sarkozy*, the defendant made a motion to withdraw his guilty plea prior to sentencing.  The Ohio Supreme Court held that Crim. R. 11(C)(2)(a) had been violated, and the plea must be vacated.  Damien Perry asserts herein that he should also be permitted to withdraw his plea, since his case is essentially identical to *Sarkozy*.  The limitation imposed by *Fischer* on the scope of a resentencing hearing should not apply when a defendant has a legitimately recognized and meritorious legal issue.  Damien Perry submits that his guilty plea to the Aggravated Robbery charge was not in compliance with Crim. R. 11, and it should be vacated.

2. Damien Perry asserts that the Aggravated Robbery charge and the Aggravated Murder charge are allied offenses of similar import and, consequently, should have been merged for purposes of sentencing.  Damien Perry seeks to have the Court rule on the allied offense issue in the context of his resentencing hearing.  *See, State v. Johnson*, (2010), 128 Ohio St.3d 153, in which the Court held that the conduct of the accused must be considered in an allied offense analysis.  Damien Perry submits that a felony murder cannot be committed without also committing an underlying felony, and, therefore, he should not be sentenced on both charges.

3. Damien Perry argues that the issue of his competency was raised prior to his entering a guilty plea and that a competency report was prepared.  He, further, argues that the Court never held a hearing with regard to that report.  The Court's docket reflects that Damien Perry entered a guilty plea on January 8, 2002, and that a defense motion for an independent psychological evaluation was granted by the Court on February 14, 2002.  The Court's docket does not reflect that the issue of Damien Perry's competence was raised prior to his entry of a guilty plea.  Over a month after his plea, an independent psychological evaluation was ordered, however, there is no indication in the docket regarding the purpose of the evaluation, nor is there any notation regarding the results of the evaluation.  Damien Perry argues herein that a copy of the report should be obtained, and if the opinion is that he was incompetent, then, the constitutional propriety of his entire guilty plea should be revisited.

5

4.    Damien Perry submits that his sentence is not consistent with that of his co-defendant, Kareem Ali, who was the admitted shooter and who received a sentence of 28 years to life.  Damien Perry was the accomplice, and he received a sentence of 38 years to life.  He submits that an additional 10 years for an accomplice is out of proportion to and not consistent with his level of participation.  He submits that his sentence should be consistent with the sentence of the person who actually pulled the trigger.

(Doc. No. 7-1, Exh. 11.)

On April 4, 2012, a "limited resentencing" hearing was held in the state trial court.  (Doc. No. 7-1, Exh. 12.)  The trial court informed Perry five years of his postrelease control was mandatory and he was returned to prison.  (*Id.*)  The trial court also advised Perry the issues raised in his "Memorandum of Law," would need to be raised on delayed appeal to the state appellate court.  (Doc. No. 7-2, Tr. 181.)

## C.    Delayed Direct Appeal

On April 30, 2012, Perry, proceeding *pro se*, filed a Notice of Appeal.  (Doc. No. 7-1, Exh. 13.)  On June 11, 2012, he filed a Motion for the Appointment of Counsel.  (Doc. No. 7-1, Exh. 14.)  The state appellate court granted this Motion on June 25, 2012.  (Doc. No. 7-1, Exh. 15.)

On July 3, 2012, Perry, through counsel, filed a "Motion to Amend Notice of Appeal to Include Notice of Delayed Appeal."  (Doc. No. 7-1, Exh. 16.)  The state appellate court granted this Motion on July 10, 2012.  (Doc. No. 7-1, Exh. 17.)

On September 17, 2012, Perry, through counsel, filed his Brief, and raised following assignments of error:

I.    The trial court erred in accepting Perry's guilty pleas to charges of aggravated (capital) murder and aggravated robbery with firearm specifications.

6

II.    The trial court erred in failing to merge the defendant's convictions for aggravated murder and aggravated robbery pursuant to R.C. 2945.21(A).

III.   Defendant-appellant Perry was deprived of his right under the United States Constitution and the Ohio Constitution to effective assistance of counsel at the original plea and sentencing hearings.

IV.    The trial court erred in proceeding with the resentencing hearing without granting Perry a hearing on his motion to withdraw his guilty pleas.

(Doc. No. 7-1, Exh. 18.)  The State filed a Brief in response.  (Doc. No. 7-1, Exh. 19.)

On April 18, 2013, the state appellate court affirmed the trial court's judgment.  (Doc.

No. 7-1, Exh. 20.)  Perry, proceeding *pro se*, filed a notice of appeal to the Supreme Court of

Ohio on May 30, 2013.  (Doc. No. 7-1, Exh. 21.)  In his Memorandum in Support of Jurisdiction,

he set forth the following propositions of law:

I.    Did the Requirement of the Three Judge Panel in this case deny Appellant the protection of the Sixth Amendment of the Constitution by not fully conforming with Crim. R. 11(C) requirements?

II.   Did the Ohio Court of Appeals Eighth District decision to affirm Murder and Aggravated Robbery in this case, amount to Plain Error pursuant to Crim. R. 52(B)?  Does the failure to raise any objections at the original Sentencing deny Appellant to raise allied offenses in a subsequent Appeal of Re Sentencing?

III.  Does counsel render ineffective assistance of counsel by failing to ensure the Death Penalty be removed when recommended Sentences are imposed?

IV.   Does *Res Judicata* bar Appellant opportunity to receive a hearing on his motion to withdraw 32.1 in a recommended sentence that involved the Death Penalty Specification?

(Doc. No. 7-1, Exh. 22.)

On September 25, 2013, the Supreme Court of Ohio declined to take jurisdiction over the

7

appeal.  (Doc. No. 7-1, Exh. 23.)

**D.      Additional Post-Conviction Filings**

Perry proceeded to file several *pro se* pleadings, motions, and documents with the state trial court.  On June 23, 2014, Perry filed a pleading captioned "Motion for 'Sentencing' and 'Issuance of a Final Appealable Order'"  (Doc. No. 7-1, Exh. 24.)  The state trial court denied this Motion as moot on June 23, 2015.  (Doc. No. 7-1, Exh. 37.)

On July 14, 2014, Perry filed "Motion for Establishment of a Date Certain for Oral Hearing."  (*Id.*)  The State filed a Brief in response, requesting the trial court "issue a nunc pro tunc entry to reflect that Perry was properly and fully advised of post release control during his initial sentencing."  (Doc. No. 7-1, Exh. 26.)  On September 8, 2014, Perry filed a "Memorandum Contra" to the State's Brief in response.  (Doc. No. 7-1, Exh. 28.)

On September 8, 2014, Perry filed "Motion for 'Conveyance Order.'"  (Doc. No. 7-1, Exh. 27.)  He filed a similarly-captioned Motion on March 12, 2015.  (Doc. No. 7-1, Exh. 29.)  On March 25, 2015, the State filed a Brief in response to these Motions.  (Doc. No. 7-1, Exh. 30.)  On April 6, 2015, Perry filed a "Memorandum Contra" to the State's Brief in response.  (Doc. No. 7-1, Exh. 31.)

On April 6, 2015, Perry filed a "Motion For: 'Sentencing.'"  (Doc. No. 7-1, Exh. 32.)  The State filed a "Motion for Nunc Pro Tunc Sentencing Entry" in response.  (Doc. No. 7-1, Exh. 33.)  On April 30, 2015, Perry filed a "Memorandum Contra" to the State's Motion.  (Doc. No. 7-1, Exh. 34.)

On June 23, 2015, the state trial court granted the State's "Motion for Nunc Pro Tunc Sentencing Entry" and denied Perry's "Memorandum Contra" as moot.  (Doc. No. 7-1, Exh. 35,

8

37.)  The state trial court issued a corresponding journal entry which added additional post-release control language to the January 18, 2002 sentencing entry.  (Doc. No. 7-1, Exh. 36.)

On August 17, 2015, Perry filed a "Motion for: 'Sentencing,' (to correct ailing postrelease control notifications(s); and, Motion for Issuance of a Final Appealable Order." (Doc. No. 7-1, Exh. 38.)  The State filed a Brief in response.  (Doc. No. 7-1, Exh. 39.)  On September 17, 2015, Perry filed a "Memorandum Contra" to the State's Brief in response.  (Doc. No. 7-1, Exh. 40.)

On November 16, 2015, Perry filed a "Motion For: 'Judgment on Pleadings' [and] 'Resentencing.'"  (Doc. No. 7-1, Exh. 41.)  On February 4, 2016, the state trial court denied this Motion, as well as his August 17, 2015 Motion.  (Doc. No. 7-1, Exh. 42.)

**E.     Federal Habeas Petition**

On March 23, 2017,[1] Perry filed a Petition for Writ of Habeas Corpus in this Court and asserted the following grounds for relief:

> **GROUND ONE**:     Petitioner's guilty plea was not concerned nor entered knowingly and intelligently, where there was a practice or pattern of combined prosecutorial misconduct and ineffective assistance of counsel in furtherance of a clearly established preexistent practice of prosecutorial misconduct designed to issue defective indictments for the intended purpose of causing actual or substantial spillover prejudice to gain or maneuver tactical advantage over petitioner in violation of his due process rights.
>
> **Facts in Support:** The prosecutor in petitioner's case

---

[1]     Under the mailbox rule, the filing date for a *pro se* petition is the date a petitioner delivers it to prison authorities.  *See Houston v. Lack*, 487 U.S. 266 (1988).  While the Petition herein did not arrive at the Court for filing until March 30, 2017, Perry reports he placed it in the prison mailing system on March 23, 2017. (Doc. No. 1 at 13.)  Thus, the Court will consider the Petition as filed on March 23, 2017.

was involved in a practice, or pattern of unconstitutional activities designed to produce blanketed defective indictments, resulting in multiple reversals of convictions because of violation of due process rights.

**GROUND TWO:**     Ineffective assistance of counsel

Petitioner claims that his attorneys performance was deficient.  And that their deficient performance prejudice and precluded him of a defense, thereby forcing him to enter a guilty plea.

Petitioner alleges that the seriousness of constitutional violations, along with the prosecutorial misconduct, supports his claim that his attorneys were involved and were ineffective.  Petitioner alleges that the advice of his attorneys to enter a guilty plea precluded his entitlement to offer a defense of diminished capacity, which would have negated his sought after mens rea, amid an unfair windfall staged in combination with the prosecutor.

**GROUND THREE:**  Prosecutorial misconduct

Petitioner asserts that the prosecutor's (William Mason) practices of misconduct were improper and flagrant, and were wide-spread within the judiciary system in Cuyahoga County, Ohio.

Petitioner alleges that his indictment represents a part of a pattern of defective indictments issued by the prosecutor, in an ongoing scheme that enlisted, or that was tacitly authorized and participated in by petitioner's attorneys to secure conviction(s) by showing that <u>either</u> [petitioner or the co-defendant] had the requisite specific intent to commit murder or aggravatde[sic] murder.  The parties (Attorneys and Prosecutor(s)), then unconstitutionally shifted the burden of proof implicating the petitioner conjunctively, with fraud upon the court by misleading him to believe he was charged with crimes that were nonexistent.  The prosecutor submitted the same misrepresentation to the trial court.  And had a

10

history, that employed these tactics.

**GROUND FOUR:**     Ex Post Facto violation that employed judicial
construction to achieve unexpected disadvantage.

Petitioner's indictment consist of Firearm
Specification(s) commenced with judicial
construction, in combination with objective of
reaching a result in appearance, that would allow for
the altering of degree of proof, to the disadvantage of
the petitioner, while simultaneously exposing him to
unexpected and indefensible veiled charges, open-
endedly designed to establish his guilt by misleading
implication(s) of nonexistent charge(s).

Petitioner allegs[sic] his due process rights were
violated, in and under circumstances of him not being
informed or given notice and being deceptively
manipulated, in furtherance of a practice or pattern of
such activities used to obtain convictions.  Which is in
violation of the Ex Post Facto Clause.

(Doc. No. 1).

On June 5, 2017, Warden Lyneal Wainwright ("Respondent") filed his Return of Writ.

(Doc. No. 7.)  Perry filed a Traverse on June 29, 2017, to which Respondent replied on July 13,

2017.  (Doc. Nos. 9, 11.)

### III.  Law and Argument – Statute of Limitations

**A.     One-Year Limitation Under AEDPA**

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides a

one-year limitations period in a habeas action brought by a person in custody pursuant to the

judgment of a State court.  Under 28 U.S.C. § 2244(d)(1), the limitation period runs from the

latest of--

(A) the date on which the judgment became final by the conclusion of direct

review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Subsections (A) and (D) are relevant to this Petition and will be discussed below.[2]

## B.    One-Year Limitation – § 2244(d)(1)(A)

Respondent asserts Perry's Petition is time-barred because he did not file within the one-year limitations period.  (Doc. No. 7 at 12.)  Respondent contends Perry's conviction and sentence became final on February 19, 2002, which was the deadline to seek review by the state appellate court.  (*Id*. at 15.)  Respondent acknowledges Perry had a limited resentencing in April 2012, but asserts this sentencing did not re-start the AEDPA statute of limitations as it "merely correctly technical errors and omissions; [it] did not impose a new custodial sentence."  (*Id*. at 14.)(emphasis in original)

Perry appears to argue the statute of limitations began to run on February 4, 2016, asserting he "invokes relation-back" to the February 4, 2016 state trial court decision to deny his post-conviction filing.  (Doc. No. 9 at 7.)  He notes his habeas petition was filed in March 2017. (*Id*.)

Pursuant to § 2244(d)(1)(A), the AEDPA's one year period runs from "the date on which

---

[2]       Perry does not argue the limitations period should commence at a later date for any of the reasons set forth in §§2244(d)(1)(B) or (C).

the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).  However, this one-year limitation is tolled during the time  " 'a properly filed application for State postconviction or other collateral review ... is pending.' § 2244(d)(2)."  *Evans v. Chavis*, 546 U.S. 189, 191, 126 S.Ct. 846, 163 L.Ed.2d 684 (2006); *Carey v. Saffold*, 536 U.S. 214, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002); accord *Matthews v. Abramajtys*, 319 F.3d 780, 787 (6th Cir.2003).  "The time that an application for state postconviction review is 'pending' includes the period between (1) a lower court's adverse determination, and (2) the prisoner's filing of a notice of appeal, provided that the filing of the notice of appeal is timely under state law."  *Id.*  Only "properly filed" applications for postconviction relief or collateral review toll the statute of limitations, and "a state postconviction petition rejected by the state court as untimely is not 'properly filed' within the meaning of § 2244(d)(2)."  *Allen v. Siebert*, 552 U.S. 3, 128 S.Ct. 2, 3, 169 L.Ed.2d 329 (2007); *Pace v. DiGuglielmo*, 544 U.S. 408, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005) ("time limits, no matter their form, are 'filing' conditions, and a state postconviction petition is therefore not 'properly filed' if it was rejected by the state court as untimely"); *Monroe v. Jackson*, 2009 WL 73905 at *2 (S.D.Ohio Jan.8, 2009).  Further, if a state court ultimately denies a petition as untimely, that petition was neither properly filed nor pending and a petitioner would not be entitled to statutory tolling.  *See Monroe*, 2009 WL 73905 at *2; *Thorson v. Palmer*, 479 F.3d 643, 645 (9th Cir.2007).

Here, Perry was sentenced on January 8, 2002 and the trial court's judgment was journalized on January 18, 2002.  (Doc. No. 7-1, Exh. 7.)  Perry then had thirty (30) days, or until February 18, 2002, to file an appeal with the state appellate court, but failed to successfully

13

do so.[3]  *See* Ohio App. R. 4(A).  Thus, the Court finds Perry's conviction and sentence became "final" for purposes of § 2244(d)(1)(A) on February 18, 2002, thirty (30) days after the time to file a timely notice of appeal with the state appellate court expired.  Accordingly, the Court finds the limitations period commenced on February 19, 2002 and, absent tolling, expired one year later, on February 19, 2003.

As noted *supra*, Perry did file multiple post-judgment motions, but none were filed prior to February 19, 2003.[4]  Thus, the motions had no tolling effect, as the statute of limitations had already expired.  *See Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir.2003).  One of Perry's filings included a delayed Notice of Appeal to the state appellate court in April 2012.  (Doc. No. 7-1, Exh. 13.)  While Perry's delayed appeal was granted by the state appellate court in July 2012, this did not toll or re-start the statute of limitations.  *See DiCenzi v. Rose*, 452 F.3d 465, 468 (6th Cir. 2006)("a motion for delayed appeal, even if granted, does not restart the statute of limitations.").  *See also Searcy v. Carter*, 246 F.3d 515, 519 (6th Cir. 2001) ("[A]lthough the filing of the motion for a delayed appeal may have tolled the running of the one-year statute, it did not cause the statute to begin running anew when the state court denied the motion.").

The Court acknowledges Perry had a limited resentencing hearing on April 4, 2012. (Doc. No. 7-1, Exh. 12, 36.)  This resentencing proceeding was held in an effort to correct an

---

[3]     Perry did not file his untimely Notice of Appeal to the state appellate court until April 30, 2012.  (Doc. No. 7-1, Exh. 13.)

[4]     A review of the record reveals Perry's first post-conviction filing was made on August 12, 2011, when he filed a *pro se* pleading with the state trial court captioned "Motion to Take Judicial Notice"  (Doc. No. 7-1, Exh. 8.)

14

error contained in the state trial court's January 18, 2002[5] journal entry, which did not specifically state Perry would be subject to five years of mandatory post-release control.  This April 2012 proceeding did not serve to impose a new sentence on Perry, as the trial court advised Perry his post release control "must be at least five years, or it can be no less than five years" at the original January 8, 2002 sentencing hearing.  (Doc. No. 7-2, Tr. 167.)  Thus, this April 4, 2012 limited resentencing merely re-advised Perry he would be "subject to five years[6] of post-release control."  (*Id*. at Tr. 180.)

Similarly, the state trial court issued a *nunc pro tunc* journal entry regarding his sentence on June 23, 2015. (Doc. No. 7-1, Exh. 36.)  This *nunc pro tunc* sentencing entry amended the January 8, 2002 journal entry to reflect the correct post release control language.  (Doc. No. 7-1, Exh 36.)

The Sixth Circuit has found where a conviction has been affirmed, but there is a separate line of review of a new sentence imposed at re-sentencing, "the judgment becomes final after direct review of the new sentence."  *Rashad v. Lafler*, 675 F.3d 564, 568 (6th Cir. 2012)(citing *Burton v. Stewart*, 549 U.S. 147 (2007)).  Thus, Perry's statute of limitations period may have begun at a later date, if the April 4, 2012 resentencing or June 23, 2015 *nunc pro tunc* entry are considered new sentences.  *See Camera v. Haviland*, 2017 WL 6459592, *7 (N.D. Ohio Oct. 6, 2017), *report and recommendation adopted* 2017 WL 6453321 (N.D. Ohio Dec. 15, 2017).

---

[5]     The January 18, 2002 journal entry imposing Perry's sentence noted "post release control is part of this prison sentence for the maximum period allowed."  (Doc. No. 7-1, Exh. 7.)

[6]     The corresponding journal entry specifically noted the five years of post release control was mandatory.  (Doc. No. 7-1, Exh. 12.)

In *Crangle v. Kelly*, 838 F.3d 673 (6th Cir. 2016), a defendant challenged a mandatory five-year post-release control sentence imposed in a state trial court's *nunc pro tunc* correction of a judgment of conviction, when the defendant's plea agreement had stated the term of post-release control would be discretionary and the trial court told him at the sentencing hearing that he would be subject to "straight parole" and not post-release control. *Id*. at 675–76. The Sixth Circuit held because the *nunc pro tunc* order created a new sentence, it was a new judgment that reset the AEDPA statute of limitations clock. *Id*. at 680. The court explained that "because '[t]he sentence is the judgment,' ... a new sentence not only permits a challenge to either the new sentence or the undisturbed conviction, but also restarts AEDPA's one-year window to challenge that judgment." *Id*. at 678 (quoting *Burton v. Stewart*, 549 U.S. 147, 156 (2007)). The court distinguished a limited resentencing that benefits a defendant, such as a sentence reduction, from a "new, worse-than-before-sentence" that "amounts to a new judgment." *Id*. And the court concluded the post-release control sentence imposed by the corrective order in that case was new and worse because it "materially increas[ed] the potential restrictions on [the defendant's] liberty[,]" with a mandatory sanction and possible future imprisonment. *Id*. at 679.

*Crangle* does not apply here. Neither the April 2012 nor the June 2015 journal entries impose a new sentence upon Perry. Instead, they reflect the sentence pronounced in open court at the original sentencing held on January 8, 2002. *See Houston v. Harris*, 2018 WL 1123671, *4 (S.D. Ohio Mar. 1, 2018). Indeed, *"Crangle* noted an important caveat in cases involving limited resentencing – only 'a new, worse-than-before sentence . . . amounts to a new judgment.'" *Cortez v. Warden Chillicothe Correctional Institution*, 2018 WL 2382456, *2 (6th

Cir. Feb. 16, 2018)(quoting *Crangle*, 838 F.3d at 678.). Here, Perry has been subject to the same sentence since January 2002. Thus, as the April 2012 and June 2015 journal entries do not create a "new judgment," they do not re-start the AEDPA statute of limitations.

Accordingly, because the statutory limitations period expired on February 19, 2003[7] and Perry did not file his habeas petition until March 23, 2017, it is untimely under §2244(d)(1)(A).

**C.    Factual Predicate – § 2244(d)(1)(D)**

While Perry does not specifically invoke 20 U.S.C. § 2244(d)(1)(D), he contends that, in relation to his ineffective assistance of counsel claim, "the factual basis of his claim [could not] be adequately developed in a state court proceedings." (Doc. No. 9 at 6-7.) Perry asserts his trial counsel was "involved with a conspiracy led by the state prosecutors, to induce his guilty plea." (*Id*. at 6.) He points to (1) his prior convictions being listed on the indictment and (2) his counsel using the evidence of his co-defendant's bad character to manipulate him into entering a guilty plea. (*Id.*)

Pursuant to §2244(d)(1)(D), the statute of limitations may commence later than the date upon which a petitioner's conviction and sentence becomes final if the petitioner demonstrates a later date wherein he could have discovered the factual predicate of his claims through the exercise of due diligence. However, the "critical determination" is not when a petitioner could

---

[7]    The Court notes Perry has suggested the AEDPA statute of limitations began on February 4, 2016, when the state trial court denied a post-conviction filing. (Doc. No. 9 at 7.) This is an incorrect reading of § 2244(d)(1)(A). Perry's misunderstanding of the statute and his *pro se* status does not waive the requirements of the statute. *See Johnson v. United States*, 544 U.S. 295, 311, 125 S.Ct. 1571, 161 L.Ed.2d 542 (2005) ("[w]e have never accepted *pro se* representation alone or procedural ignorance as an excuse for prolonged inattention when a statute's clear policy calls for promptness"). Moreover, assuming, *arguendo*, the statute of limitations did not begin until February 2016, Perry does not explain why he filed his federal habeas Petition on March 23, 2017, over a year later.

have discovered the legal basis or all the evidence supporting the claim, but merely the factual predicate. *Gorospe v. Smith,* 2011 WL 4431091 at *4 (N.D. Ohio Sept. 22, 2011).  Moreover, it is the petitioner who "bears the burden of proving that he exercised due diligence, in order for the statute of limitations to begin running from the date he discovered the factual predicate of his claim." *DiCenzi v. Rose,* 452 F.3d 465, 471 (6th Cir. 2006).  *See also Bey v. Capello*, 525 Fed. App'x 405, 408 (6th Cir. May 10, 2013).

Specific to ineffective assistance of counsel claims, when calculating the statute of limitations under §2244(d)(1)(D), the time begins "when the prisoner learned facts that supported a good faith basis for arguing prejudice arising from ineffective assistance of counsel, not when the prisoner understood the legal significance of the facts known to him." *Gorospe,* 2011 WL 4431091 at *6 (citing *Hasan v. Galaza,* 254 F.3d 1150 (9th Cir. 2001).).

To the extent Perry even raises an argument for factual predicate, he does not provide the Court with the date in which he learned of the evidence which forms the basis of his ineffective assistance of counsel claim.  (*See* Doc. No. 9 at 6-7.)  Rather, he requests an evidentiary hearing for "additional factual inquiry."  (Doc. No. 9 at 7.)  Thus, it is unclear as to what date Perry is asserting the statute of limitations should have began to run under §2244(d)(1)(D).

Regardless, the Court finds a petitioner in Perry's position, acting with due diligence for AEDPA statutory purposes, would have discovered the factual predicate underlying his ineffective assistance of counsel claim prior to the deadline to file a timely direct appeal.  In respect to Perry's arguments regarding his indictment, this indictment was available for Perry's review prior to trial.  Moreover, as it was Perry who was in discussions with his trial counsel regarding a plea deal, he would been the individual in the best position to discover his trial

18

counsel's alleged tactic of "luring and manipulating the petitioner away from a jury trial."  (*See* Doc. No. 9 at 7.)  Thus, Perry should have been aware of the basis for his ineffective assistance of counsel claim prior to his conviction and sentence becoming final.  Moreover, Perry does not provide the Court with any explanation as to why he could not have discovered the factual predicate underlying his claim prior to that date.  *See Bey*, 525 Fed. App'x at 408 (finding a petitioner did not meet his burden of showing due diligence when he did not provide "any reason to suppose that he not only did not but *could not* have discovered" the factual predicate underlying his claim.).

Because the limitation period under § 2244(d)(1)(D) begins when the prisoner knows (or through diligence could discover) the important facts, Perry cannot seek refuge under this provision.  *See Townsend v. Lafler,* 99 Fed.App'x 606, 608 (6th Cir. May 14, 2004).  He was aware, or should have been aware, of the factual predicate underlying his ineffective assistance of counsel claim prior to his conviction and sentence becoming final.

Accordingly, the Court rejects Perry's suggestion the AEDPA statute of limitations has not yet started to run because he has been unable to develop his ineffective assistance of counsel claim.  The Court further finds Perry has failed to otherwise identify any factual predicate that would justify a later start date of the AEDPA statute of limitations period.

In sum, as the statutory limitations period expired on February 19, 2003 and Perry did not file his habeas petition until March 23, 2017, it is beyond the AEDPA statute of limitations. Therefore, unless equitable tolling is appropriate, Perry's Petition should be dismissed as time-barred.

E.      **Equitable Tolling**

The Supreme Court has held the AEDPA statute of limitations is subject to equitable tolling in appropriate circumstances.  *Holland v. Florida,* 560 U.S. 631, 645 (2010).  In order to be entitled to equitable tolling, a habeas petitioner must establish that (1) he has been pursuing his rights diligently; and, (2) some extraordinary circumstance stood in his way and prevented timely filing.  *Holland,* 130 S.Ct. at 2565.  *See also Hall v. Warden, Lebanon Correctional Institution*, 662 F.3d 745, 749 (6th Cir. 2011); *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002).  A court should be "much less forgiving ... where the claimant failed to exercise due diligence in preserving his legal rights."  *Vroman,* 346 F.3d at 605, quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990); accord *Jurado v. Burt*, 337 F.3d 638, 642 (6th Cir.2003).

The Court finds Perry has failed to demonstrate he is entitled to equitable tolling. As an initial matter, Perry has not raised any argument as to why equitable tolling would be appropriate.  (*See* Doc. Nos. 1, 9.)  *See, e.g., Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)(holding a petitioner bears the burden of proving equitable tolling is applicable). Further, Perry has not been reasonably diligent in pursuing his rights.  Perry did not timely file his direct appeal with the state appellate court.  Rather, Perry waited over ten years after his original conviction and sentencing to file a Notice of Appeal with the state appellate court.  (Doc. No. 7-1, Exh. 7, 13.)  Perry does not explain why he filed his federal habeas Petition in March 2017, over *fourteen years* after the AEDPA statute of limitations had run.  Moreover, given that Perry has been able to file a multitude of post-conviction motions with the state trial court, there does not appear to be any "extraordinary circumstance" which prevented him from filing a timely

20

federal habeas petition.

The Court also rejects any suggestion Perry's *pro se* status constitutes "extraordinary circumstances" warranting equitable tolling.  The Sixth Circuit has repeatedly held "ignorance of the law alone is not sufficient to warrant equitable tolling."  *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991).  *See Allen v. Yukins*, 366 F.3d 396, 403 (6th Cir. 2004); *Allen v. Bell*, 250 Fed. Appx. 713, 716 (6th Cir. 2007); *Taylor v. Palmer*, 623 Fed. Appx. 783, 789 (6th Cir. 2015).  *See also Johnson v. United States*, 544 U.S. 295, 311, 125 S.Ct. 1571, 161 L.Ed.2d 542 (2005) ("[w]e have never accepted *pro se* representation alone or procedural ignorance as an excuse for prolonged inattention when a statute's clear policy calls for promptness"); *Patrick v. Bunting*, 2015 WL 10488878 at * 9 (N.D. Ohio Dec. 29, 2015).  Moreover, courts within this Circuit have found a petitioner's *pro se* status, lack of legal training, poor education, and/or limited law-library access, standing alone, are similarly insufficient.  *See e.g., Hall*, 662 F.3d at 751 (petitioner's *pro se* status, limited law-library access and lack of access to trial transcript were not sufficient to warrant equitable tolling); *Keeling*, 673 F.3d at 464 ("Keeling's *pro se* status and lack of knowledge of the law are not sufficient to constitute an extraordinary circumstance and to excuse his late filing").

In sum, because Perry failed to exercise his rights diligently and no extraordinary circumstance prevented him from filing his habeas Petition, the Court finds equitable tolling is not warranted in this case.

**F.      Actual Innocence**

In *McQuiggin v. Perkins*, 569 U.S. 383, 133 S.Ct. 1924, 1928, 185 L.Ed.2d 1019 (2013), the United States Supreme Court held that actual innocence, if proven, may overcome the

expiration of AEDPA's one-year statute of limitations.  The Court noted that a claim of actual

innocence is not a request for equitable tolling but, rather, a request for an equitable exception to

§ 2244(d)(1).  *Id*. at 1931.

For the actual innocence exception to apply, a petitioner must "support his allegations of

constitutional error with new reliable evidence–whether it be exculpatory scientific evidence,

trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial."

*Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).  The Supreme Court

explained, however, that "tenable actual-innocence gateway pleas are rare" and "'[a] petitioner

does not meet the threshold requirement unless he persuades the district court that, in light of the

new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a

reasonable doubt.'"  *McQuiggin*, 133 S.Ct. at 1928 (quoting *Schlup*, 513 U.S. at 329).  In making

this assessment, "'the timing of the [petition]' is a factor bearing on the 'reliability of th[e]

evidence' purporting to show actual innocence."  *Id*. (quoting *Schlup*, 513 U.S. at 332).

Here, Perry does not raise an argument for the actual innocence exception, beyond

asserting he is innocent due to "nonexistant charges made within his indictment."  (Doc. No. 1 at

11.)  He does not identify any new, reliable evidence of his actual innocence;[8] i.e., exculpatory

scientific evidence, trustworthy eyewitness accounts, or critical physical evidence that was not

---

[8]    Perry asserts several exhibits submitted by the State "represent presentations [of]
fraud upon the Court."  (Doc. No. 9 at 3.)  It appears Perry is referring to several
clerical errors, including those made by his own appellate counsel, contained within
the exhibits.  (*See* Doc. No. 7-1, Exh. 1, 16, 19, 20, 26.)  While these errors reveal
inadvertent mistakes within briefs filed with the state court, they do not prove his
actual innocence or otherwise explain why his federal habeas Petition was filed well
beyond the AEDPA statute of limitations.   They also do not, despite Perry's
contention otherwise, create a "factual dispute" which would preclude dismissal of
this Petition.  (*See* Doc. No. 9 at 4.)

available to him at the time of his underlying criminal proceedings.  *See Schlup*, 513 U.S. at 324.

Accordingly, and for all the reasons set forth above, the Court finds Perry has not demonstrated he is entitled to the actual innocence exception.  Thus, the Court finds the instant Petition is time-barred under §2244(d)(1).

### IV.  Law and Argument – Procedural Default

Respondent argues even if Perry's claims were not time-barred under §2244(d)(1), they would be barred due to procedural default.  (Doc. No. 7 at 33, 40, 44, 47.)  Respondent asserts while Perry was able to file a delayed appeal with the state appellate court, "he did not raise the same claims and theories in his delayed appeal that he raises in his federal habeas petition."  (*Id.* at 32, 39.)  Respondent contends *res judicata* "now prevents Perry from presenting his federal claims to the state courts and his federal claims are procedurally defaulted."  (*Id.* at 33, 40, 44, 47)  Respondent concludes as Perry cannot establish "cause and actual prejudice, or actual innocence to excuse his multiple state court procedural defaults, federal habeas review and relief are foreclosed."  (*Id.*)

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)).  A claim may become procedurally defaulted in two ways.  *Id.*  First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court.  *Id.; see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  If, due to petitioner's failure to comply with the procedural rule,

23

the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[9] *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac,* 456 U.S. 107, 125 n. 28, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731–32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013) ("a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.") This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts. AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28. Where state court remedies are no longer available to a petitioner because he failed to use them within the required

---

[9] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135. Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id.* at 138–39; *Barkley v. Konteh*, 240 F. Supp.2d 708 (N.D. Ohio 2002). "In determining whether a state court actually enforced a procedural rule, we apply the 'plain statement' rule of *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)." *Lovins v. Parker*, 712 F.3d 283, 296 (6th Cir. 2013) ("a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar.") (citations omitted).

24

time period, procedural default and not exhaustion bars federal court review.  *Id*.  In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal.  *Id*.  Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted.  *Id*.

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim.  *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue-not merely as an issue arising under state law."  *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).  A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error.  *See Maupin*, 785 F.2d at 138–39.  "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule."  *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with

25

constitutional error." *Id.*  Where there is strong evidence of a petitioner's guilt and the evidence

supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied.  *See*

*United States v. Frady*, 456 U.S. 152, 172, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Perkins v.*

*LeCureux*, 58 F.3d 214, 219–20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir.

1994).  Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that

the outcome of the trial would have been different.  *See Mason v. Mitchell*, 320 F.3d 604, 629

(6th Cir. 2003) (citing *Strickler v. Greene*, 527 U.S. 263, 289, 119 S.Ct. 1936, 144 L.Ed.2d 286

(1999)).

      Finally, a petitioner's procedural default may also be excused where a petitioner is

actually innocent in order to prevent a "manifest injustice."  *See Coleman v. Thompson*, 501 U.S.

722, 749–50, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).  Conclusory statements are not enough—a

petitioner must "support his allegations of constitutional error with new reliable

evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or

critical physical evidence-that was not presented at trial."  *Schlup v. Delo*, 513 U.S. 298, 324, 115

S.Ct. 851, 130 L.Ed.2d 808 (1995).  *See also Jones v. Bradshaw*, 489 F. Supp.2d 786, 807 (N.D.

Ohio 2007); *Allen v. Harry*, 2012 WL 3711552 at * 7 (6th Cir. Aug. 29, 2012).

      With these principles in mind, the Court finds each of Perry's four Grounds for Relief are

procedurally defaulted.  Perry failed to present any of his federal habeas claims to the state

courts.  Ground One of his federal habeas Petition claims Perry's guilty plea was not entered

knowingly or intelligently due to (1) prosecutorial misconduct; (2) ineffective assistance of

counsel; and (3) a defective indictment.   (Doc. No. 1 at 5.)  Ground Two alleges ineffective

assistance of counsel[10] based on allegations defense counsel forced him to enter a guilty plea and failed to offer a defense of diminished capacity.  (*Id*. at 9.)  Ground Three alleges prosecutorial misconduct based upon a "pattern of defective indictments" and Perry being misled into believing he was charged with nonexistent crimes.  (*Id*. at 10.)  Finally, Ground Four (entitled "Ex Post Facto Violation That Employed Judicial Construction to Achieve Unexpected Disadvantage") alleges *Ex Post Facto* and Due Process violations stemming from the indictment's treatment of firearm specifications.  (*Id*.)

Perry did not raise any of these claims in his delayed direct appeal to the state appellate court or his subsequent appeal to the Supreme Court of Ohio.  As set forth *supra*, Perry raised four claims in the state appellate court.  Two of the claims dealt with the merger of Perry's convictions and his resentencing hearing, neither of which were raised in his federal habeas Petition.  (*See* Doc. No. 7-1, Exh. 18.).  The other two raised arguments regarding his guilty plea and ineffective assistance of trial counsel.  However, these arguments made no mention of the specific arguments set forth in Perry's federal habeas Petition.  Specifically, while Perry raised arguments regarding his guilty plea to the state appellate court, they centered on the trial court's failure to comply with Crim. R. 11.  (*Id.*)  Similarly, while Perry raised an ineffective assistance of counsel claim to the state appellate court, his argument was defense counsel (1) did not fully evaluate the strength of his case; (2) did not obtain any significant benefit in exchange for his guilty plea; (3) did not ensure Perry made an intelligent decision in entering his plea; and (4) failed to address the issue of merger at the sentencing hearing.  (*Id.*)  None of these claims are

---

[10]    In his Traverse, Perry raises the additional argument his defense counsel was "involved with a conspiracy lead by the state prosecutors, to induce his guilty plea." (Doc. No. 9 at 6.)

contained within his federal habeas Petition.

In his subsequent appeal to the Supreme Court of Ohio, Perry again raised four claims for relief.  (Doc. No. 7-1, Exh. 22.)  Similar to his state appellate court appeal, none of the propositions of law[11] submitted to the Supreme Court of Ohio made any mention of the arguments raised in his federal habeas Petition.  (*Id*.)

In addition, Perry did not raise his federal habeas arguments in any of his post-conviction filings.  (*See* Doc. No. 7-1, Exh. 8, 9, 24, 25, 27, 28, 29, 31, 32, 34.)  Perry also has made no attempt to re-open his appeal,  pursuant to Ohio App. R. 26(B).  As the state appellate court affirmed the state trial court's judgment on April 18, 2013, the time for Perry to timely seek relief under Rule 26(B)[12] is long expired.  Further, there is nothing in the Petition suggesting a state

---

[11]     The Propositions of Law made to the Supreme Court of Ohio were as follows:

I.     Did the Requirement of the Three Judge Panel in this case deny Appellant the protection of the Sixth Amendment of the Constitution by not fully conforming with Crim. R. 11(C) requirements?

II.     Did the Ohio Court of Appeals Eighth District decision to affirm Murder and Aggravated Robbery in this case, amount to Plain Error pursuant to Crim. R. 52(B)?  Does the failure to raise any objections at the original Sentencing deny Appellant to raise allied offenses in a subsequent Appeal of Re Sentencing?

III.     Does counsel render ineffective assistance of counsel by failing to ensure the Death Penalty be removed when recommended Sentences are imposed?

IV.     Does Res Judicata bar Appellant opportunity to receive a hearing on his motion to withdraw 32.1 in a recommended sentence that involved the Death Penalty Specification?

(Doc. No. 7-1, Exh. 22.)

[12]     Pursuant to Ohio App. R. 26(B), "[a]n application for reopening [based on a claim of ineffective assistance of appellate counsel] shall be filed in the court of appeals where the appeal was decided within 90 days from the journalization of the appellate

court remedy would now be available to Perry, at this late date, to raise any of his habeas grounds for relief.  Thus, the Court finds Perry's habeas claims are procedurally defaulted.

Moreover, Perry has failed to demonstrate either cause or prejudice sufficient to overcome the procedural default.  Perry has not provided any explanation as to why he did not raise any of these arguments until filing his federal habeas Petition in March 2017.  Each of his grounds for relief pertain to matters which Perry would have been aware of at the time of his direct appeal.  Moreover, given that Perry was able to file multiple post-conviction motions from 2011– 2016, the Court can find no reason or explanation for Perry's decision to wait until March 2017 to initially present any of these arguments for review.

Finally, as noted *supra*, Perry has not presented any new evidence of actual innocence in this case.  Absent new evidence of innocence, "even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim."  *Schlup*, 513 U.S. at 316.  Thus, the Court finds there is no basis for excusing the procedural default of Perry's Petition.

Accordingly, and in light of the above, it is recommended the Court find that, in addition to being time-barred, Perry's claims are procedurally defaulted.

## V. Evidentiary Hearing

While Perry has not made a formal motion, within his Traverse he does request an evidentiary hearing "to independently resolve petitioner's claims, under a setting that allows for additional factual inquiry."  (Doc. No. 9 at 7.)

---

judgment unless the applicant shows good cause for filing at a later time." Perry has not set forth any facts in his habeas petition suggesting good cause for his failure to timely re-open his appeal under this Rule.

"[A] district court shall not hold an evidentiary hearing on a habeas claim unless the petitioner, who failed to develop the factual basis of the claim in state court, 'shows that the claim relies on a factual predicate that could not have been previously discovered through the exercise of due diligence.'" *Freeman v. Trombley*, 483 Fed. App'x 51, 66 (6th Cir. 2012) (citing 28 U.S.C. § 2254(e)(2)(A)(ii)). "Diligence for purposes of § 2254(e)(2) depends on 'whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court.'" *Robinson v. Howes*, 663 F.3d 819, 824 (6th Cir. 2012) (quoting *McAdoo v. Elo*, 365 F.3d 487, 500 (6th Cir.2004)).

The Court finds Perry has failed to provide any basis for an evidentiary hearing.  Perry appears to argue he requires an evidentiary hearing in relation to his ineffective assistance of counsel claim, as "the factual basis of his claim [could not] be adequately developed in state court proceedings."  (Doc. No. 9 at 6-7.)  However, Perry has not specified what evidence or testimony he would present.  Moreover, as discussed *supra*, a petitioner in Perry's position, acting with due diligence, should have been aware of the basis for his ineffective assistance of counsel claim.  Finally, as Perry's entire Petition is time-barred and procedurally defaulted, his request for an evidentiary hearing is moot.

Accordingly, the Court finds an evidentiary hearing is not warranted. Perry's request should therefore be denied.

## VI. Conclusion

For all the reasons set forth above, the undersigned recommends the Petition be

DISMISSED.

Date:   September 5, 2018                         *s/ Jonathan D. Greenberg*
                                                  Jonathan D. Greenberg
                                                  United States Magistrate Judge


## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**